UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
KBM WORLDWIDE, INC.,

                Plaintiff,

-against-

HANGOVER JOE'S HOLDING
CORPORATION AND MATTHEW VEAL,

                Defendants.
------------------------------------------------------------x

Civil Action No.: cv-15-7254
        (SJF) (GRB)


PLAINTIFF'S MEMORANDUM OF LAW


Naidich Wurman LLP.
Attorney for Plaintiffs
111 Great Neck Road –
Suite #214
Great Neck, NY 11021

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
KBM WORLDWIDE, INC.                          :
                                             :   Civil Action No.: cv-15-7254
                Plaintiff,                   :            (SJF) (GRB)
                                             :
        -against-                            :
                                             :
HANGOVER JOE'S HOLDING                       :
CORPORATION AND MATTHEW VEAL,                :
                                             :
                                             :
                                             :
                Defendants.                  :
------------------------------------------------------------x

PRELIMINARY STATEMENT

Plaintiff KBM Worldwide, Inc., respectfully submits this Memorandum of Law in opposition to the motion by the defendants, Hangover Joe's Holding Corp. and Matthew Veal seeking judgment on the pleadings or alternatively summary judgment.

STATEMENT OF FACTS

A. Nature of Action and Description of Parties

The plaintiff, KBM Worldwide Inc. ("Plaintiff") is a close corporation engaged in the business of investing in small capitalization public companies such as defendant Hangover Joe's Holding Corp. ("Defendant"). The Defendant is a small public company with offices in Colorado. The individual defendant, Matthew Veal is the president and CEO of the Defendant.

In this action, the Plaintiff seeks, to recover upon a convertible promissory note and securities purchase agreement executed and delivered by the Defendant under which the Defendant has defaulted. The Defendant contends that this convertible promissory note is criminally usurious and therefore unenforceable. This contention is erroneous as a matter of law, fact and equity.

B. The Prior Transactions

The Plaintiff has been doing business with the Defendant for several years and during that period has engaged in four prior separate transactions, each of which is virtually identical to the transaction that the Plaintiff now seeks to have declared illegal. Specifically, on May 9, 2014 the Defendant borrowed $29,000 from the Plaintiff; on May 28, 2014 it borrowed $32,500; on July 24, 2014 it borrowed $27,500; and on September 2, 2014 it borrowed another $32,500. Each of those transactions were made pursuant to convertible promissory notes and securities purchase agreements virtually identical to those at issue here. Each of those transactions were fully honored by the Defendant, and the Plaintiff successfully and without objection or rancor converted each of the debts into stock of the Defendant which stock was then sold by the Plaintiff - - a process to which the Defendant now belatedly objects. At no time during those prior transactions, did the Defendant ever complain about the business practices of the Plaintiff or the nature and substance of the transactions and documents entered into between the parties. To the contrary, all of those prior transactions were successfully completed by being converted to stock apparently to the benefit and satisfaction of the Defendant. Parenthetically, the Defendant also entered into two similar transactions with Asher Enterprises, Inc.,

2

("Asher") a corporation under common ownership with the Plaintiff. On January 15, 2014 the Defendant borrowed $58,000 from Asher and another $22,500 on March 21, 2014. Both transactions were successfully completed through the conversion process without objection from the Defendant.

    C.   The Subject Transaction

On January 2, 2015 in exchange for a convertible promissory note ("Note") and securities purchase agreement ("Agreement") issued by the Defendant, the Plaintiff advanced the sum of $43,000 to the Defendant. Pursuant to the Note and Agreement, that sum was to bear interest at the rate of 8% per annum and was to be repaid by the Defendant within nine months after the issuance date. However, after a six month holding period, pursuant to applicable Securities Law the Plaintiff had the contractual right to convert all or part of the Note from debt into common stock of the Defendant at a pre-set discount rate that was contractually agreed upon. The Plaintiff would then have the right to resell the stock in the open market at a potential profit. To the extent that the debt was converted into stock, such debt would be deemed satisfied, and the Defendant would pay neither principal nor interest. Further, the Defendant had a right to pre pay the debt during the initial six month holding period and thereby terminate the Plaintiff's rights of conversion.

The reasons why these transactions are structured in this manner is as follows: a publicly traded corporation such as the Defendant is not able to legally issue unrestricted stock for sale to the public without a federal registration statement. Since these registration statements are extremely expensive, companies like the Defendant typically

do not obtain them. Thus, any stock purchased or received by a recipient is known as "restricted stock" which has very limited value since it cannot be sold. There are a number of exceptions, to the requirement of obtaining a registration statement, including Rule 144, which is a safe harbor under the Federal Securities Laws, to wit, the Securities Act of 1933, which permits an entity which has held a security (i.e. a convertible promissory note) issued by the publicly traded company for six months to convert that security (i.e. the Note) into corporate stock which is unrestricted and can be resold.

Although the stock purchased under the Rule 144 exemption is generally purchased at a discount from its unrestricted free trading value, this is not untoward in any way but instead is quite typical of such transactions in the securities industry. A cogent analysis of this area of securities law and the fact that such restrictive stock is generally sold (if at all) at a substantial discount from the fair trading value is well presented by the United States Internal Revenue Service in Rev. Rul. 77-287, 1977-2 C.B.319, 1977 WL 43794. Stated differently, there is nothing illegal or improper about the nature or substance of such transactions, despite the Defendant's protestations to the contrary. The Defendant's contention is wrong for the simple reason that when it sells stock to the Plaintiff in exchange for relinquishment of debt, it actually sells the stock at a *premium* over the value of the restricted stock being sold, which is virtually nominal. Thus, the Defendant's contentions must fall of their own weight.

D. The Commencement of this Action

Had this transaction proceeded in the normal course, the Defendant would have maintained its required filings under the Federal Securities Laws and the Plaintiff would

have converted the Note into stock of the Defendant, which the Plaintiff would then have sold at a potential profit. This profit would come not as a result of funds paid by the Defendant but instead from funds paid by third party purchasers in the market place. Put otherwise, the profit to be received by the Plaintiff would not constitute interest or a payment by the Defendant in any event. Instead of honoring its obligations, the Defendant defaulted by failing to maintain its required filings and defaulted again by failing to pay the Note at the maturity date, which was nine months after the date on which the Note was executed.

The Complaint was filed on December 21, 2015 and contains nine separate causes of action. The Defendant interposed an Answer with counterclaims and the Plaintiff filed a Reply thereto. The Defendant now moves for dismissal. It is respectfully submitted that whether the motion is considered to be one for judgment on the pleadings, pursuant to F.R.C.P. Rule 12(b)(6) or for summary judgment, pursuant to F.R.C.P. Rule 56, that the motion should be denied for the legal reasons set forth below, as the Defendant has failed to meet its burden for either dismissal or summary judgment.

## ARGUMENT

### POINT I

### THE DEFENDANT HAS NOT MET ITS BURDEN FOR ESTABLISHING CRIMINAL USURY

A. The Applicable Standards

It is well established that usury penalties imposed for the violation of usury statutes are to be strictly construed and should not be held to include any violation which

5

is not clearly within the plain intention of the statute. Freitas v. Geddes Savings and Loan Association, 63 N.Y.2d 254 (1984). New York Courts have placed the burden of proving the transaction usurious on the borrower, declaring the defense of usury must be decisively proved and not left to interference or implication. *Id*. Stated differently, the borrower relying on the usury statutes has the burden of establishing usury by clear and convincing evidence. Mahler v. Bernsley, 265 A.D.2d 531 (2d Dep't, 1999). Moreover, there is a strong presumption against a finding of usury. Feinberg v. Old Vestal Road Associates, Inc., 157 A.D.2d 1002 (3d Dep't, 1990).

As the Court of Appeals stated in Giventer v. Arnow, 37 N.Y.2d 305 (1975) (p. 309):

> The usury defense must be established by clear evidence as to all of the elements essential thereto [citation omitted]. The court will not assume that the parties entered into an unlawful agreement [citation omitted]. On the contrary, when the terms of the agreement are an issue, and the evidence is conflicting, the lender is entitled to a presumption that he did not make a loan at a usurious rate [citations omitted].

The Defendant does not meet these burdens. Zhavoronkin v. Koutmine, 52 A.D.3d 597 (2d Dep't, 2008). It is well settled that a corporation, like the Defendant, is prohibited from asserting the defense of civil usury. Pepin v. Jani, 101 A.D.3d 694 (2d Dep't, 2012). Although a corporation may, under certain circumstances, assert criminal usury as a defense, such is not the case here. AJW Partners LLC v. Itronics, Inc., 68 A.D.3d 567 (1st Dep't, 2009) (usury counterclaim dismissed; defendant's motion to dismiss complaint denied).

That is to say, the Defendant in this case seeks to raise illegality as a sword for personal gain rather than a shield for the public good. This is impermissible, and especially inappropriate as the Federal Securities Laws, including Rule 144, specifically govern and permit such transactions. Lloyd Capital Corp. v. Pat Henchar, Inc., 80 N.Y.2d 124, 128 (1992). In other words, the penalties of the usury statutes should not be extended to situations that are not within their primary intendment, especially in circumstances like those here where a finding of usury would preserve the borrower's ownership of the security and at the same time confer upon him the benefit of an unjust enrichment. Pisano v. Rand, 30 A.D.2d 173 (2d Dep't, 1968). Thus, even if the Note and Agreement at issue here were usurious (and they are not) the Legislature of the State of New York did not intend to grant sophisticated and savvy parties such as the Defendant the protection of the criminal usury statute, which was enacted to protect poor and unsophisticated borrowers. Koenig v. Slazer Enterprises LLC, 27 Misc. 3d 1212 (A), 2010 WL 1568427 (Sup. Ct., Rockland Co., 2010).

B.  The Note and Agreement Are Not Usurious by Their Very Terms

Moreover, and in any event, the Note and Agreement are not criminally usurious by their very terms as they provide for a stated interest rate of 8% per annum. Thus, the Defendant's contentions are refuted by the clear documentary evidence and must therefore fall. Atul Bhatara v. Futterman, 122 A.D 3d 509 (1st Dep't, 2014); Hicki v. Choice Capital Corp., 264A.D. 2d 710 (2d Dep't, 1999); Lehman v. Roseanne Investors Corp., 106 A.D. 2d 617 (2d Dep't, 1984).

    C.    <u>The Pre-payment Provisions Cannot Form the Basis for a Usury Finding</u>

Significantly, the Defendant's reliance upon the pre-payment provisions of the Note is misplaced. It is well established that pre-payment penalties or payments cannot be the basis of a claim of usury. <u>Feldman v. Kings Highway Savings Bank</u>, 303 N.Y.675 (1951); <u>Lyons v. National Savings Bank of Albany</u>, 280 App. Div. 339 (3d Dep't, 1952); <u>Poughkeepsie Galleria Company v. Aetna Life Insurance Company</u>, 178 Misc. 2d 646 (Sup. Ct, Dutchess Co., 1998); <u>Redmond v. Ninth Federal Savings & Loan Association</u>, 147 N.Y.S.2d 702 (Sup. Ct, Queens Co. 1955).

    D.    <u>The Defendant is not Required to Pay Interest in any Event</u>

Additionally, there can be no finding of usury here because there is no payment of interest by the Defendant, except for simple interest of 8% per year, which is far less than the 25% interest per year required for criminal usury. Usury is defined as the corrupt agreement of parties by which more than lawful interest is paid and requires (1) a loan or forbearance of money; (2) an understanding that the principal will be repayable absolutely; (3) the exaction of a greater profit than is allowed by statute; and (4) an intention to violate the usury statute. 72 N.Y. Jur. 2d, Interest and Usury, Section 55.

Here, the purpose of the agreements at issue is to permit a public company such as the Defendant to effectively sell restricted stock - - which is worthless to the Defendant because it cannot be traded on the market - - to an investor such as the Plaintiff who is willing to avail itself of Rule 144 by taking the risks inherent in the six month holding period so that it can then convert the issued legended stock into unrestricted or free trading stock. Once again, the monies received on the sales in the market place by the

Plaintiff are not paid by the Defendant. Instead, they are paid by third parties. Thus, the Defendant never pays anything. The Defendant's theory is also deeply flawed because it assumes that the Defendant is selling stock that is worth the full fair trading market value when in fact it is selling restricted stock which has very limited value. Thus, the calculation of the hypothetical interest as presented by Defendant is entirely wrong.

Put into different words, the true nature of the transaction at issue is the sale of stock by which both parties gain. In theory, a corporation such as the Defendant, if its stock was registered and trading at $1.00 per share and it needed to raise $100,000, would simply open up its stock book, issue a certificate for 100,000 shares and place those shares into the market by giving it to a stockbroker or selling it to a private investor. However, because such stock is restricted and cannot be resold as trading stock, such an investor would not pay $1.00 per share but only pennies per share. That is why the Defendant turns to an investor like the Plaintiff. The Plaintiff pays the Defendant fifty-eight cents on the dollar in the form of a loan because the Plaintiff cannot acquire the stock immediately. Instead, the Plaintiff acquires the Note and Security Purchase Agreement which it must hold for six months and can then convert the Note into stock. The Defendant has free and unbridled use of the funds until the investor can avail itself of the conversion option. Because of the Rule 144 exemption, the Plaintiff can then sell the stock for $1.00 per share (assuming the market value has not changed which is always a considerable risk), the Defendant retains fifty-eight cents per dollar as the Note is deemed satisfied, and the Defendant retains the possible forty-two cents profit. It is this profit that the Defendant complains of, but that profit does not come at the expense of the

9

Defendant because the Defendant does not pay it. Instead, the Defendant has made a profit itself because it has effectively sold restricted stock with nominal value for fifty-eight cents on the dollar. This is not a usurious transaction by any conceivable analysis.

Thus, if the Defendant had attempted to sell its stock on the open market without the use of the Plaintiff's Rule 144 exemption, such an attempted sale would be clearly illegal under the Federal Securities Laws. <u>Securities and Exchange Commission v. Greenstone Holdings, Inc.</u>, 2012 WL 1038570 (S.D.N.Y. 2012); <u>Securities and Exchange Commission v. Verdiramo</u>, 890 F. Supp. 2d 257 (S.D.N.Y.2011). The fact that the Plaintiff is contractually entitled to potentially convert the restricted stock into free trading stock and then sell it for a profit (but not at the expense of the Defendant) is of no moment. <u>Nichols v. Fearson</u>, 32 U.S.103, 8 L. Ed. 623 (1833); <u>Stockwell v. Holmes</u>, 33 N.Y.53, 6 Tiffany 53 (1865).

Thus, the option price of the shares at issue is no reliable criterion of value, such that the contention that this transaction was usurious cannot be maintained. <u>Halsey v. Winant</u>, 258 N.Y.512, 180 N.E. 253 (1932).

Moreover, and in any event, the Note, cannot be deemed usurious because it is to be paid based upon a contingency within the control of the debtor and the debtor can avoid the conversion process simply by paying promptly. <u>Salamone v. Russo</u>, 129 A.D.3d 879 (2d Dep't, 2015).

E. <u>Defendant Should be Estopped from Asserting any Potential Usury Defense</u>

We submit that, even if the Note was usurious (and it clearly is not) the Defendant must be estopped from interposing such a defense through its long time relationship with

10

the Plaintiff during which it executed a series of identical instruments under similar circumstances. Ammirato v. Duraclean International, Inc., 687 F. Supp. 2d 210 (E.D.N.Y. 2010); Russo v. Carey, 271 A.D.2d 889 (3d Dep't, 2000); Pemper v. Reifer, 264 A.D.2d 625 (1st Dep't, 1999); Abramovitz v. Kew Realty Equities, Inc., 180 A.D.2d 568 (1st Dep't, 1992). Thus, the Defendants' reliance upon the criminal usury statutes is misplaced in any event, as it would be inequitable to prevent the Defendant to rely on that defense after successfully engaging in virtually the same transaction on multiple occasions without comment or objection. The defense of criminal usury should be dismissed.

F. Guiding Precedents

Finally, the Notes and Agreements that the Plaintiff seeks to have voided and declared unenforceable have specifically been sustained by the Courts, most recently in a case entitled Asher Enterprises, Inc. v. Digital Brand Media & Marketing Group, Inc., Supreme Court, Nassau County Index No. 600717-2014 (n.o.r.). In that case, the Court upheld identical agreements where the debtor, as here, argued that they should be unenforceable upon grounds such as usury, fraud, or the Federal Securities Laws. The same result should obtain here.

G. Defendant's Cases Are Distinguishable

The cases cited by and relied upon by the Defendant lend no support to its cause. In Fareri v. Rain's International, Ltd., 187 A.D.2d 481 (2d Dep't, 1992), cited by Defendant, the parties stipulated that the agreement at issue charged interest at the rate of 26.14% per year. Such is not the case here, thereby distinguishing the Fareri case.

In Blue Wolf Capital Fund II, L.P. v. American Stevedoring Inc., 105 A.D.3d 178 (2013), cited by Defendant, a lender made a loan of $1,130,000 but retained $325,000 as fees and deposits. The agreements at issue thus had an actual interest rate to be paid by the borrower of 36.09% thereby making it subject to the criminal usury statute.

Such is not the case here. as no such fees and deposits were retained by the Plaintiff, thereby rendering the Blue Wolf case inapposite. Indeed, that case actually supports our position because the Court observed that in order to determine whether a transaction was usurious we must not look to its form but to its substance or real character. The true character of the Note and Agreement is that it was never the intention of the parties for the advanced funds to be repaid in cash with or without interest, because the substance of the transaction was that the Defendant was being given the opportunity to sell restricted stock at a premium and that the Plaintiff was using its Rule 144 exemption to convert that restricted stock into free trading stock to the benefit of all parties. In other words, as the transaction was not usurious at its inception, it cannot be made so by later events, such as the profit that the Plaintiff might receive (or might not) through the subsequent conversion process. Brest v. Kleidman, 300 A.D. 2d 133, (1st Dep't, 2002); Stitz v. Stevens, 70 A.D.2d 588 (2d Dep't, 1979). Thus, the usury laws do not apply here. The motion should be denied.

12

## CONCLUSION

The motion should be denied in all respects as the Defendant has not met the burden for either dismissal or summary judgment.

Dated: June 29, 2016
      Great Neck, New York

                                      Respectfully submitted,

                                      NAIDICH WURMAN LLP
                                      Attorneys for Defendants

                                      By: _____
                                      Richard S. Naidich
                                      111 Great Neck Road, Ste. 214
                                      Great Neck, NY 11021
                                      (516) 498-2900